```
                                              FILED
                                    CLERK, U.S. DISTRICT COURT

                                       DEC 1 4 2006

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY                      DEPUTY
```

Priority
Send
Enter
Closed
~~JS-5~~/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FLORESA SULLIVAN and MICHAEL           )    CV 06-3222 SVW (MANx)
PORTER, on behalf of                   )
themselves and others                  )    ORDER GRANTING DEFENDANT'S
similarly situated,                    )    MOTION FOR SUMMARY JUDGMENT
                                       )    [32]
                    Plaintiffs,        )
                                       )
          v.                           )
                                       )
GMRI, INC., and DOES 1-50,             )
inclusive,                             )
                                       )
                    Defendants.        )
                                       )
                                       )
_____        )
                                       )
                                       )

I.   INTRODUCTION

     Plaintiffs Floresa Sullivan and Michael Porter brought this

purported class action[1] against GMRI, Inc. ("GMRI" or "Defendant") in

Los Angeles Superior Court for purported violations of state law.  A

first amended complaint ("FAC") was filed on April 28, 2006.

_____

[1] Sullivan and Porter sought a class defined as: "[a]ll persons who
are employed or have been employed as a 'food server' or similar
title, by [GMRI] in the State of California from four (4) years prior
to the filing of this suit."  (FAC at 4.)

1  Defendant removed the action to this Court on May 25, 2006.  Porter

2  was dismissed from the case without prejudice under Rule 41(a)(1) on

3  November 2, 2006, leaving Sullivan ("Plaintiff" or "Sullivan") as the

4  sole plaintiff at this stage.

5       Plaintiff's lawsuit alleges three causes of action: (1) an

6  unlawful tip distribution under Cal. Labor Code § 351, (2) unfair

7  competition pursuant to Cal. Bus. & Prof. Code § 17200, and (3)

8  penalties under Cal. Labor Code § 2699.  GMRI operates restaurants

9  such as Darden Restaurants, Red Lobster, and Olive Garden.  Plaintiff

10 is a "food server" for GMRI and "tipped out" a portion of her tips to

11 bartenders and other kitchen staff who "did not offer direct table

12 service to the customers."  (FAC at 4.)  On August 18, 2006, this

13 Court granted in part Defendant's motion to dismiss and denied its

14 motion to strike.  In pertinent part, this Court held that Cal. Labor

15 Code § 351 does not confer a private right of action, and dismissed

16 that aspect of Plaintiff's FAC.

17      Defendant has now filed a motion for summary judgment as to

18 Plaintiff's remaining causes of action.[2]  The violations of Section

19 _____

20 [2] The Court has yet to rule on a motion for class certification, which
   was to be filed in January 2007.  Under Ninth Circuit law, this Court
21 is permitted to rule on a motion for summary judgment prior to a
   motion for class certification based on the parties' consent.  See
22 Wright v. Schock, 742 F.2d 541, 545-46 (9th Cir. 1984) ("Neither
   [Rule] 23 nor due process necessarily requires that the district court
23 rule on class certification before granting or denying a motion for
   summary judgment. Rule 23 clearly favors early determination of the
24 class issue, but where considerations of fairness and economy dictate
   otherwise, and where the defendant consents to the procedure, it is
25 within the discretion of the district court to decide the motion for
   summary judgment first.").  The parties have implicitly consented to
26 this management of the case because: (1) Defendant filed the instant
   motion and (2) Plaintiff's opposition does not request that the issue
27 of class certification be determined first.  The Court, therefore,
   exercises its discretion to resolve this motion for summary judgment
28

1 | 17200 and Section 2699 are completely predicated on a finding that the
2 | tip pooling arrangement was unlawful.  Plaintiff opposes this motion
3 | on the grounds that there "are two factual issues in dispute here: (1)
4 | whether GMRI maintains a policy/requirement regarding tip out and (2)
5 | whether bartenders offer direct table service to customer [sic] at
6 | dining tables."  (Pl. Opp. At 2.)  Among its various arguments,
7 | Defendant asserts that it is perfectly lawful to impose a tip pooling
8 | arrangement as long as none of the individuals benefitting from it are
9 | employers or employees with supervisory functions.

10 |     For the reasons discussed below, this Court GRANTS Defendant's
11 | motion for summary judgment.

12 |

13 | **II.   FACTS**

14 |     A.   <u>Plaintiff's Work Experience</u>

15 |     Sullivan is "currently employed by GMRI at a Red Lobster
16 | restaurant."  (Sullivan Depo. at 19:15-18.)  She started working at a
17 | Red Lobster in Valencia, California, in January 2004.  (<u>Id.</u> at 24:14-
18 | 18.)  After a few months, she transferred to the Red Lobster in Canoga
19 | Park (#0525).  (<u>Id.</u> at 25:6-10.)  She has been employed at the Red
20 | Lobster in Lakewood, California (#0528), since January 2006.  (<u>Id.</u> at
21 | 20:5-10.)  At all three locations, she has worked as a "food server."
22 | (<u>Id.</u> at 25:20 - 26:2.)

23 |     During her employment, Plaintiff has "shared tips" <u>only</u> with
24 | "[b]ussers, alley coordinators, which are the runners, the food
25 | runners, and bartenders."  (<u>Id.</u> at 31:6-15.)  There are four "manager"
26 | positions at Red Lobster - the culinary manager, beverage and

27 | ――――――――――

28 | at this time.

1  hospitality manager, service manager, and general manager.  These are

2  the only four supervisory positions in the restaurant.  (Id. at 43:21-

3  25.)  Plaintiff never shared her tips with these managers, or her

4  employer.  (Id. at 51:7-9).

5      On her first day of work at the Valencia location, Plaintiff

6  independently asked a manager about the practice of shared tipping.

7  (Id. at 39:11-13.)  She was informed by this individual that there was

8  a "practice" of "tip[ping] out" to bussers and bartenders.  (Id. at

9  44:5-14.)  This unknown manager did not tell Plaintiff that she it was

10 mandatory to tip out a certain percentage to these other employees.

11 (Id. at 46:20-23.)  More recently, while working at the Lakewood Red

12 Lobster restaurant, a meeting was held in which the food servers were

13 told that "the only persons that required you to tip out are the

14 bartenders, and nobody else."  (Id. at 89:7-8.)[3]  At the same time,

15 Plaintiff does not know if she would suffer any detrimental

16 consequence for failing to follow this Lakewood policy.  (Id. at

17 91:20.)  Plaintiff also concedes that she has never been provided with

18 any written policy or procedure regarding tip-out requirements during

19 her time as a Red Lobster employee. (Pl's. Sep. Statement at 2.)

20

21

22 [3] Plaintiff has also submitted a declaration indicating that she is
   "required by management to tip out bartenders a minimum of 5% of my
23 bar sales," but this can only be interpreted as applying to her
   current position at the Lakewood restaurant.  (See Levine Decl. Ex.
24 25.)  The Court will not permit Sullivan to contradict her deposition
   testimony by this declaration.  See Kennedy v. Allied Mut. Ins. Co.,
25 952 F.2d 262, 266 (9th Cir. 1991) ("[I]f a party who has been examined
   at length on deposition could raise an issue of fact simply by
26 submitting an affidavit contradicting his own prior testimony, this
   would greatly diminish the utility of summary judgment as a procedure
27 for screening out sham issues of fact.") (internal citation and
28 quotation marks omitted).

4

1     Plaintiff admits that bussers "provide customer service by
2  cleaning tables" and that alley coordinators/food runners "deliver
3  food to the tables, and when they do not do this, they stage the food
4  to assist the server."  (Id. at 3.)  The bartenders serve the
5  customers in at least two ways.  First, a bartender makes "bar
6  drinks," including alcoholic or other non-alcoholic frozen drinks, and
7  leaves such drinks at the bar for Plaintiff to deliver.  (Sullivan
8  Depo. at 71:7 - 72:21.)  Second, bartenders serve food and drinks
9  directly to individuals dining and drinking in the bar area of the
10 restaurant.  (Id. at 70:11-24.)  On occasion, a customer would begin
11 with drinks in the bar area, and would then transfer his/her check to
12 Plaintiff's table once it was available for use.  (Id. at 69:22 -
13 70:8.)  Thus, it is not surprising that Plaintiff answered "Correct"
14 in her deposition when asked whether the "bartenders and the alley
15 coordinators help you contribute to the guest experience at the
16 restaurant."  (Id. at 64:9-13.)

17     B.   GMRI Practices and Policies

18     In its answer to Plaintiff's interrogatories, Defendant admitted
19 that there is a "practice of servers tipping out individuals other
20 than bussers" at numerous Olive Garden and Red Lobster locations,
21 including the Red Lobsters that have employed Plaintiff - Valencia,
22 Canoga Park, and Lakewood.  (Levine Decl. Ex. 2.)[4]  However, it is

---

24 [4] Plaintiff has also submitted a document purported to be a memorandum
   "regarding [GMRI's] tipping out policies," which is dated September
25 10, 1999.  (Levine Decl. ¶ 5 & Ex. 4.)  However, the Court has no
   basis for concluding that this document is what Plaintiff claims.  The
26 document does not refer to "GMRI," "Red Lobster," or "Olive Garden."
   Plaintiff has not demonstrated the document's origin, or whether Edna
27 Morris (the memorandum's author) is or was an employee of GMRI.  Even
   assuming that this document was sufficiently authenticated, it only
28 shows that individual GMRI restaurants were empowered to institute a

1  ambiguous whether the term "practice" refers to a voluntary or

2  mandatory policy of tipping out.  Plaintiff's only asserted evidence

3  of a GMRI policy in this regard merely indicates that each individual

4  restaurant had discretion in terms of instituting a tipping out

5  policy.  (Id. Ex. 4.)   The fact that some general managers have

6  discussed the practice of tipping out (id. Ex. 12 at 29:3 - 30:7),

7  does not mean that there was a mandatory policy at Plaintiff's

8  particular restaurants of employment.

9      Plaintiff has submitted numerous deposition transcripts of GMRI

10  restaurant managers[5] and declarations signed by GMRI food servers.

11  The food servers, in particular, declare that they were required to

12  tip out a portion of their tips.  (See Levine Decl. Exs. 15-24.)

13  However, none of these individuals were ever employed, or had any

14  knowledge of, the practices and procedures of the Red Lobsters that

15  employed Plaintiff.  As a result, these declarations and testimony do

16  not explain whether there was a mandatory tip sharing policy at these

17  three Red Lobsters, or the extent to which bartenders served

18  customers.

19  ///

20  ///

21

_____

22  tipping out policy if it "makes sense" to do so.  Although it provides
    specific suggestions for effectively implementing such a practice,
23  these can only be interpreted as guidelines, not mandatory policies.

24  At the same time, Defendant's objection that the memorandum is
    irrelevant because it was written prior to the four-year class in
25  question is not well taken.  If this document had indicated a clear
    GMRI-wide policy of mandatory tipping as of September 1999, a jury
26  would have been able to infer (absent any subsequent documentation)
    that this policy continued throughout the period affecting the class.
27  [5] As detailed by Defendant, Plaintiff's citation to the testimony of
28  GMRI managers is not very supportive of its position.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) requires the Court to grant summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See id. at 323-34; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1968). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Only genuine disputes – where the evidence is such that a reasonable jury could return a verdict for the nonmoving party – over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248; see also Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (holding the nonmoving party must provide specific evidence from which a reasonable jury could return a verdict in its favor).

7

IV.  **ANALYSIS**

California Labor Code § 351 provides that:

> No employer or agent shall collect, take, or receive any gratuity
> or a part thereof that is paid, given to, or left for an employee
> by a patron, or deduct any amount from wages due an employee on
> account of a gratuity, or require an employee to credit the
> amount, or any part thereof, of a gratuity against and as a part
> of the wages due the employee from the employer. Every gratuity
> is hereby declared to be the sole property of the employee or
> employees to whom it was paid, given, or left for.

Although Plaintiff's claim brought directly under this section was
previously dismissed for lack of a private right of action,
Defendant's violation of Section 351 is a prerequisite to a finding of
liability under Cal. Bus. & Prof. Code § 17200 and Cal. Labor Code §
2699.  See Steihebel v. Los Angeles Times Communications, 126 Cal.
App. 4th 696, 712 (2005) ("While an employer's policy or practice that
violates the Labor Code may also be held an 'unlawful business
practice' under Business and Professions Code section 17200 et seq.,
where, as here, an employer's policy is lawful and permissible, there
is no basis for relief under the unfair competition law.") (internal
citation omitted); Cal. Labor Code § 2699(a) (allowing an "aggrieved
employee" to recover penalties "for a violation of th[e Labor]
code").[6]  Thus, if Defendant is entitled to summary judgment on the

---

[6] Plaintiff's FAC explicitly grounds her basis for recovery under
Section 2699 as permitted due to "[d]efendants' violation of Labor
Code §§ 351 [sic] which call for civil penalties." (FAC at 10.)

1  basis of Section 351, then Plaintiff's remaining causes of action must

2  likewise fail.[7]

3      Plaintiff claims there are two disputes of material fact that

4  must be resolved at trial: "(1) whether GMRI maintains a

5  policy/requirement regarding tip out and (2) whether bartenders offer

6  direct table service to customer [sic] at dining tables." (Pl. Opp.

7  At 2.)  The Court hereby holds that neither ground is sufficient to

8  overcome Defendant's motion.[8]

9      A.   Mandatory Tip Pooling

10     The parties are well aware of the fact that Leighton v. Old

11  Heidelberg, Ltd., 219 Cal. App. 3d 1062 (1990), is the seminal case

12  regarding mandatory tip pooling arrangements.  Prior to that case,

13  "[n]o reported California judicial decision ha[d] interpreted section

14  351 to apply its prohibitions to employer-mandated tip pooling." Id.

15  at 1067.  In Leighton, the court encountered a tip pooling policy in

16  which the employer required waiters and waitresses to give 15% of

17  their tips to busboys and 5% to waiters.  The court roundly

18

19  [7] The Court notes that a great deal of Plaintiff's evidence focuses on

20  policies and practices at GMRI restaurants other than those that have
    employed Plaintiff.  This evidence may have relevance if Plaintiff had

21  successfully certified a class.  However, the class certification
    motion has yet to be filed, and as such the case can only proceed if

22  there is a material issue of fact as it pertains to Plaintiff's
    employment, and not to GMRI food servers generally.

23  [8] There is also arguably a general requirement that any mandatory tip-

24  pooling scheme must be "fair and reasonable" in terms of its
    distribution.  See DLSE Letter 1998.12.28-1 ("[T]here must be some

25  reasonable relationship between the degree to which the employee or
    category of employee provides such table service and the distribution

26  of pooled tips.")  Plaintiff has not argued that providing 5-10% of
    her bar sales to the bartender, 10-15% of total sales or actual tips

27  to bussers, or 5% to alley coordinators/food runners is unfair.
    Plaintiff's attack is limited to the very fact that there is a

28  mandatory tip pooling arrangement in the first place.

"reject[ed] . . . [the] contention that employer-mandated tip pooling constitutes a prohibited 'taking' by the employer within the meaning of section 351." Id. at 1068.  In explaining its reasoning, the court stated:

> We dare say that the average diner has little or no idea and does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it, because he rewards for good service no matter which one of the employees directly servicing the table renders it. This, and the near impossibility of being able to determine the intent of departed diners in leaving a tip, in our view, account for the Legislature's use of the term "employees" in declaring that "[e]very such gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for." . . . It is clear that the Legislature intended by this section to cover just such a situation. More than often the patron decides what is good service by the attention the busboy gives. As a practical matter, if he is attentive to the needs of the patron, filling water glasses promptly, bringing rolls and butter, clearing the table, mopping up spills, pouring coffee, etc., this kind of attention will incline the patron to leave a generous gratuity even though the service rendered by the waiter or waitress may not be all that satisfactory. Conversely, if the busboy is inattentive and his service is slow, sloven or haphazard, the disgruntled patron just as likely will depart leaving less than a respectable tip or nothing at all regardless of the kind of service rendered by the waiter or waitress.

1   <u>Id.</u> at 1069-70.  Based on this analysis, a more recent California

2   appellate court decision has stated that "[t]ip pooling is permissible

3   as long as it does not run afoul of the prohibitions in section 351."

4   <u>Jameson v. Five Feet Rest.</u>, 107 Cal. App. 4th 138, 143 (2003) (citing

5   <u>Leighton</u>, 219 Cal. App. 3d at 1067).

6       The only explicit "prohibition" in Section 351 bars an "employer"

7   or "agent" from absconding with any portion of the "employee or

8   employees['] [gratuities] to whom it was paid, given, or left for."

9   An "employer" is "every person engaged in any business or enterprise

10   in this state that has one or more persons in service under any

11   appointment, contract of hire, or apprenticeship, express or implied,

12   oral or written."  Cal. Labor Code § 350.  An "agent" is any "person

13   other than the employer having the authority to hire or discharge any

14   employee or supervise, direct, or control the acts of employees."  <u>Id.</u>

15       GMRI first argues that there is no evidence suggesting that

16   Plaintiff participated in a mandatory tip pooling arrangement while

17   employed at the three Red Lobster locations in Valencia, Canoga Park,

18   and Lakewood.  GMRI contends that the arrangement was merely

19   voluntary.  No court has ever suggested that a voluntary tip pooling

20   scheme between employees could be unlawful.  Even Judge Johnson, who

21   dissented to the <u>Leighton</u> majority's decision to permit mandatory tip

22   pooling, hastened that "[i]n no sense should my dissent be read as

23   urging a ban on voluntary 'tip-pooling' compacts among employees of a

24   business establishment."  219 Cal. App. 3d at 1086 (Johnson, J.,

25   dissenting).  GMRI's claim is only partly supported by the evidence.

26   Sullivan has presented no evidence suggesting that she was required to

27   "tip out" to busboys, bartenders, or alley coordinators/food runners

28   while employed at Red Lobster in Valencia or Canoga Park.  In fact,

Plaintiff's testimony regarding her discussion with an unidentified manager at Valencia supports the view that tipping out was not required at that location.  While the manager informed her that there was a "practice" of tipping to certain other employees, he never stated that it was mandatory.

However, this conversation differs starkly with Plaintiff's testimony of her experiences at the Lakewood Red Lobster.[9]  Although Defendant quibbles with Plaintiff's testimony, it has failed to dispute that a Lakewood Red Lobster manager held a meeting "a few months" before her September 25, 2006 deposition in which the requirement of tipping out to bartenders was communicated.  Although the exact date is unclear, a jury could infer from this testimony that a mandatory policy was in place during the entirety of Plaintiff's employment at this location.  The meeting may have occurred some time after her start date, but could be reasonably viewed as merely reinforcing a mandatory policy already in place.  Consequently, Plaintiff's claims (if permitted at all) must be limited to the tip pooling arrangement she participated in while at the Lakewood Red Lobster.  This tip pooling also only extends to bartenders.

Second, GMRI is correct in asserting that Plaintiff was never required or encouraged to share her tips with her "employer" or an "agent."  Plaintiff readily admits that she has only shared tips with

---

[9]  The parties have not directed the Court to specific evidence of any conversations or meetings that Plaintiff had regarding the practice while at the Canoga Park Red Lobster.  Plaintiff testified that her "first meeting" regarding tip sharing did not occur until she was at Lakewood.  (Sullivan Depo. At 88:13-16.)  Plaintiff has failed to offer any evidence of a mandatory tip sharing policy while at Canoga Park.  Ultimately, this conclusion is not material to the motion's outcome.

1  "[b]ussers, alley coordinators, which are the runners, the food

2  runners, and bartenders."[10]  The only employees who could qualify as

3  "agent[s]" under Section 350 are Red Lobster's managers, and she did

4  not give any portion of her gratuities to them.  Further, Plaintiff

5  has never claimed that her employer, GMRI, deducted a percentage of

6  her tips and retained them.

7       The Court must resolve the evidence in Plaintiff's favor, and

8  therefore finds that she was required to submit to a mandatory tip

9  pooling arrangement with bartenders while at the Lakewood Red Lobster.

10 Of course, since this tip sharing did not involve an "employer" or

11 "agent," Defendant argues that the scheme was plainly lawful.

12 Defendant is right, unless Plaintiff's argument that bartenders do not

13 provide "direct table service" is persuasive.

14      **B.   Direct Table Service**

15      Plaintiff argues that a mandatory tip sharing scheme is not

16 permitted, even when limited to non-supervisory employees, if some of

17 those employees do not provide "direct table service" to customers.

18 Plaintiff argues that Red Lobster bartenders do not directly serve

19 customer tables.  GMRI responds in two ways: (1) mandatory tip pooling

20 schemes are not legally limited to non-supervisory employees who

21 engage in direct table service, and (2) bartenders do directly serve

22 Red Lobster customers at their tables.

23

24 [10]  In Jameson, a California appellate court invalidated a mandatory
25 tip sharing agreement where it extended to "floor managers" whose job
   description included both supervisory duties and the direct service of
26 restaurant patrons.  107 Cal. App. 4th at 144.  Plaintiff does not
   argue, and the evidence does not imply, that any of the bartenders,
27 bussers, or alley coordinators/food runners with whom she shared her
   tips also performed any supervisory functions that would lead to their
28 categorization as an "agent" under Section 350.

1  Plaintiff's theory originated from <u>Leighton</u> itself.  There are at
2  least two passages that are significant to this argument.  First, the
3  court wrote, "if more than one employee, for example a waitress and a
4  busboy, <u>directly serve the table of a patron</u>, the gratuity is left for
5  the 'employees' within the meaning of section 351, and thereunder
6  becomes their sole property as against the employer, to be equitably
7  distributed between them."  <u>Leighton</u>, 219 Cal. App. 3d at 1070
8  (emphasis added).  Second, the court added that "[t]he public leaves a
9  tip for those employees who <u>actually service the table</u>, and has a
10  right to expect that those employees receive the gratuity to the
11  exclusion of the employer.  <u>Id.</u> (emphasis added).

12  While the term "direct table service" does not lend itself to
13  easy definition, it is obvious that the bussers and alley
14  coordinators/food runners meet this standard.  Plaintiff testified
15  that bussers "provide customer service by cleaning tables" and that
16  alley coordinators/food runners "deliver food to the tables, and when
17  they do not do this, they stage the food to assist the server."  There
18  is no question that these employees, who shared in Plaintiff's tips,
19  directly contribute to the customer experience while they are sitting
20  at Plaintiff's dining tables.  Plaintiff's argument must therefore be
21  limited to bartenders.

22         1.  <u>Purported Threshold Necessity</u>

23  Defendant first argues that mandatory tip pooling can only be
24  held unlawful where a portion of the tips are shared with the employer
25  or an agent.  Defendant asserts that the "direct table service"
26  requirement involves a misreading of <u>Leighton</u>.  To this end, Defendant
27  relies significantly on Judge Morrow's recent decision in <u>Louie v.</u>
28  <u>McCormick & Schmick Rest. Corp.</u>, ___ F. Supp. 2d ___, 2006 WL 3087112

(C.D. Cal. Oct. 18, 2006).  In Louie, Judge Morrow was confronted with a similar factual context.  The Louie plaintiff filed a purported class action, while represented by the same attorneys representing Plaintiff in this case, because she was "required to pay 'bartenders a percentage of [her] tips' even when they 'did not offer direct table service to her customers.'"  Id. at *1.  The Louie plaintiff brought the same three causes of action initially alleged in the instant case.  Judge Morrow granted the defendant's motion to dismiss and denied leave to amend as futile because the claim failed "as a matter of law."  Id. at *8.

As in this case, Judge Morrow was asked to rule whether "tip-pooling arrangements must be limited to employees who directly serve patrons at their tables."  Id. at *3.  After examining Leighton, Judge Morrow ruled that "[t]he court . . . cannot afford these passages the significance" sought by the Louie plaintiff, and rejected the "stringent table service/non-table service distinction."  Id. at *3.

The Court agrees with Judge Morrow's view that there is no "direct table service" requirement in Section 351.  The Court notes that Leighton is a somewhat strangely written opinion.  It is evident from the undisputed facts of the case that the Leighton plaintiff was required to pay 15% of her tips to the busboys and 5% to the bartenders.  129 Cal. App. 3d at 1065-66.  She was fired for refusing to pay the 15%, but no mention is made of whether she complied with the bartender arrangement.  Following the recitation of facts, the Leighton majority analyzed mandatory tip pooling arrangements, but did so solely from the perspective of the busboy.  Judge Morrow interprets Leighton to implicitly approve of tip sharing with a bartender regardless of his "direct" table involvement, since the court did not

1  strike it down.  See Louie, 2006 WL 3087112, at *3.  This result is

2  persuasive, due to the fact that the Leighton court approved the

3  scheme generally.

4          2.   The Red Lobster Bartenders Meet this Requirement

5       Yet, this Court is somewhat troubled by Leighton's silence on the

6  bartender paradigm.  It does not require much imagination to construct

7  a hypothetical in which a busser would be defined as engaging in

8  direct table service, while a bartender does not so qualify.

9       Additionally, the parties cite to two advisory letters prepared

10  by the California Division of Labor Standards Enforcement ("DLSE").

11  As explained by Judge Morrow, the "DLSE is the state agency that

12  adjudicates wage claims, investigates discrimination and public-work

13  complaints, and enforces the Labor Code and Industrial Welfare

14  Commission orders."  Id. at *6.  This Court should defer to the DLSE's

15  reasonable interpretations.  See id. (citing Yamaha Corp. of Am. v.

16  Bd. of Equalization, 19 Cal. 4th 1, 21 (1998) (Mosk, J., concurring)).

17  In a 1998 DLSE letter, the DLSE stated relatively clearly at one point

18  that "[e]mployees who do not provide direct table service cannot be

19  included in any tip pooling arrangement."  (Req. Jud. Notice Ex. F. at

20  45.)  This letter also stated that it is the "prevailing industry

21  practice" to share a small percentage of tips with "employees who

22  provide limited direct table service (i.e., bartenders, hostesses, and

23  maitre d's)."  (Id. at 46.)  The DLSE, by this letter, did not decide

24  that bartenders are always permitted to partake in mandatory tip

25  pooling, but that they are a category of employees who "could

26  conceivably" meet this "direct table service" requirement.  (Id. at

27  45.)  The DLSE's 2005 letter essentially eschewed the term "direct

28  table service," but held that "[t]ip pool participants are limited to

1  those employees who contribute in the chain of the service bargained

2  for by the patron, pursuant to industry custom." (Id. Ex. E at 42.)

3      Nonetheless, the Court alternatively holds that the bartenders

4  undisputedly participate in "direct table service." The term itself

5  is somewhat amorphous. It is unclear what it takes for an employee to

6  "contribute[s] in the chain of the service," or to "actually service

7  the table." The 1998 DLSE letter is instructive. In it, the DLSE

8  explained that "[e]mployees who do not provide 'direct table service'

9  include dishwashers, cooks and chefs (except at a sushi restaurant, or

10  similar facility, where the chef prepares the food at the customer's

11  table). (Id. Ex. F at 45.)

12      One of the duties of the bartenders in this case, as detailed by

13  Plaintiff, is that they make alcoholic or frozen drinks. These drinks

14  are left for Plaintiff to pick up, and then she delivers them to her

15  customers' table. The drinks are not delivered by the bartender or

16  made at the customer's table by the bartender. This function is

17  potentially akin to the behind-the-scenes cook or chef, which the 1998

18  letter apparently excludes from the "direct table service" definition.

19  Thus, if the bartenders' function in this case was limited to mixing

20  drinks that are exclusively transported by others, then Plaintiff's

21  argument might have some force.

22      However, the bartenders in this case are not so limited. It

23  is undisputed that the bartenders directly serve drinks and food to

24  customers sitting in the bar area of the Red Lobsters where Plaintiff

25  has worked. Plaintiff might complain that this fact is irrelevant,

26  because such bartenders must actually serve customers located in

27  Plaintiff's service area. This counterargument is unavailing.

28  Plaintiff concedes that at times, though allegedly "not often,"

1  customers begin their dining experience while sitting in the bar and

2  are served, whether with drinks or food, by bartenders.  Once a table

3  becomes available, such persons are "transferred" to Plaintiff and the

4  customers move to a table in Plaintiff's designated seating area.

5  This is also not disputed.  Without question, such bartenders have

6  participated in "direct table service" for those customers also served

7  by Plaintiff.[11]

8       Plaintiff declares that she was required to tip out a "minimum of

9  5% of [her] bar sales" to bartenders.  (Levine Decl. Ex. 25.)  As

10  explained by the 1998 DLSE letter, the entire practice of tip pooling

11  is "admittedly inexact" and involves only a "rough correlation" to

12  services performed.  (Req. Jud. Notice Ex. F at 46.)  The Court cannot

13  say that a 5% (or even a 10%) tip out is unfair under the conceded

14  "direct table service" provided by the bartenders who are employed at

15  Plaintiff's Red Lobster locations.

16

17  **V.    CONCLUSION**

18       A jury could infer that Plaintiff was required to tip out to

19  bartenders at the Lakewood Red Lobster.  Despite this fact, the

20  Lakewood policy was lawful under California Labor Code § 351.  This

21  conclusion would apply regardless of whether Plaintiff is right in her

22  contention that there is a "direct table service" requirement implicit

23

24  [11] Plaintiff's declaration asserts that bartenders did not "have any

25  interaction with the customers [she] served in the dining room."
    (Levine Decl. Ex. 25.)   This argument is irrelevant since Plaintiff

26  has conceded that bartenders did at times have a significant "direct"
    impact prior to their arrival in the "dining room" area of Red

27  Lobster.  When patrons wait at the bar prior to being seated in the
    dining room, it is clear that the bartenders' service constitutes a

28  direct role in the customer's "experience."

1  in this statute, because the bartenders in question meet this

2  threshold service.   Plaintiff's remaining unfair competition and

3  Section 2699 causes of action cannot survive.

4       For the foregoing reasons, Defendant's motion for summary

5  judgment is GRANTED.

6

7  IT IS SO ORDERED.

8

9

10

DATED: __12/13/06__

11

12                                    STEPHEN V. WILSON
                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28